## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **Northwest Capital Holdings LLC**, | Bankruptcy No. 20-05334 |
| Debtor. | Honorable Jack B. Schmetterer |

## NOTICE OF MOTION

To: See attached list.

**Please take notice** that, on February 2, 2021 **at 11:00 a.m.**, I will appear telephonically before the Honorable Jack B. Schmetterer, or any judge sitting in his place, and present the Debtor's Motion for Entry of Order (A) Approving Procedures for Sale of Westbrook Apartments and (B) Authorizing Sale of Westbrook Apartments Free and Clear of Liens, Claims and Encumbrances.

**This motion will be presented and heard telephonically using AT&T Teleconference. No personal appearance in court is necessary or permitted. To appear and be heard telephonically on the motion, you must call in to the hearing using the following information—Toll Free Number: 1-877-336-1839; Access Code: 3900709.**

If you object to this motion and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

Dated: January 26, 2021

**Northwest Capital Holdings LLC**

By: /s/ William J. Factor

One of Its Attorneys

William J. Factor (6205675)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:    (312) 878-0969
Fax:    (847) 574-8233
Email: wfactor@wfactorlaw.com

{00184910 2}

## CERTIFICATE OF SERVICE

I, William J. Factor, hereby certify that I served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method indicated on the list on January 26, 2021.

/s/ William J. Factor

## SERVICE LIST

**Registrants**
(Service via ECF)

William J. Factor on behalf of Debtor 1 Northwest Capital Holdings LLC
wfactor@wfactorlaw.com,
wfactorlaw@gmail.com;bharlow@wfactorlaw.com;wfactor@ecf.inforuptcy.com;wfacto
rmyecfmail@gmail.com;factorwr43923@notify.bestcase.com
Brandon R. Freud on behalf of Creditor Midland States Bank
bfreud@chuhak.com, dburns@chuhak.com
Patrick S. Layng
USTPRegion11.ES.ECF@usdoj.gov
Jeffrey K. Paulsen on behalf of Debtor 1 Northwest Capital Holdings LLC
jpaulsen@wfactorlaw.com, bharlow@wfactorlaw.com;jpaulsen@ecf.inforuptcy.com

**Other Parties in Interest**
(Service via U.S. Mail)

See attached.

David M. Katinsky
Chief, CTS-Northern
Tax Division (DOJ)
P.O. Box 55
Ben Franklin Station
Washington, DC 20044

United States Attorney
Civil Process Clerk
219 South Dearborn Street, Room 500
Chicago, IL 60604

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101

Internal Revenue Service
Mail Stop 5014CHI
230 S. Dearborn St., Room 2600
Chicago, IL 60604

Joel Christensen
Behr, McCarter & Potter, P.C.
7777 Bonhomme Avenue, Suite 1400
St. Louis (Clayton), MO  63105

City of Springfield
327 Municipal Center
Springfield, IL 62701

City of Springfield
800 East Monroe Street
Springfield, IL 62701

Ed Streit
Manager, Northwest Capital Holdings
40 W. 439 Laura Ingalls Wilder Road
Saint Charles, IL 60175

Jacqueline Streit
2508 S.W. 30th Street
Cape Coral, FL 33914

Julie Streit
40 W. 439 Laura Ingalls Wilder Road
Saint Charles, IL 60175

Attn: Officer or President
Cutting Edge Yard Service
PO Box 44
Auburn, IL 62615

Attn: Officer or President
CWLP Utilities
Municipal Center West
300 S. 7th Street
Room 101
Springfield, IL 62757

Pete Kich
Dugan & Lopatka
4320 Winfield Road, Suite 450
Warrenville, IL 60555

Karrsten Goettel
2000 McDonald Road, Suite 200
South Elgin, IL 60177
Fax: 847-695-2401

Attn: Officer of President
Petri Painting and Construction
806 West Market
Bloomington, IL 61701

Attn: Officer or President
Sherwin Williams
3161 Hedley Rd.
Springfield, IL 62704

Attn: Officer or President
Republic Services
Acct No: 3-0352-0001218
2980 Granger Drive
Springfield IL 62707-355757

Northwest Services
2980 Grainger Drive
Springfield, IL 62707

Sangamon County Water Reclamation
District
3000 North Eighth Street
Springfield, IL 62707

Blair Will
Pioneer Law Group
1122 S. Street
Sacramento, CA 95811

Ed Streit
Manager, Northwest Capital Holdings
40 W. 439 Laura Ingalls Wilder Road
Saint Charles, IL 60175c

Attn: Officer or President
Petri Painting and Construction
314 North Jefferson
Lot 5
Millstadt,  Illinois  IL 62260

Midland States Bank
100 N. Chicago Street
Joliet, IL 60432

Realty Shares 227 LLC
268 Bush Street
Suite 3932
San Francisco, CA 94104

Brandon Freud
Chuhak & Tecson
30 South Wacker Dr., Suite 2600
Chicago, IL 60606

Justin Reichert
Stratton, Moran, Giganti, Reichert
725 South Fourth Street
Springfield, IL 62703

Manager
RealtyShares Manager, LLC
501 2nd Street, 7th Floor
San Francisco, CA 94107

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **Northwest Capital Holdings LLC**, | Bankruptcy No. 20-05334 |
| Debtor. | Honorable Jack B. Schmetterer |

### DEBTOR'S MOTION FOR ENTRY OF ORDER (A) APPROVING PROCEDURES FOR SALE OF WESTBROOK APARTMENTS AND (B) AUTHORIZING SALE OF WESTBROOK APARTMENTS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

Northwest Capital Holdings LLC (the "***Debtor***") owns a 220-unit apartment complex in Springfield, Illinois (i.e., the "***Westbrook Apartments***"). The Debtor believes it is appropriate to sell the Westbrook Apartments pursuant to an auction under § 363 of the Bankruptcy Code and to implement procedures for a competitive bidding process intended to maximize value for all stakeholders.

Accordingly, by this motion, the Debtor requests that the Court enter an order (Exhibit 1) approving the sale procedures (the "***Sale Procedures***") set forth herein and further identified on Exhibit 1 for accepting bids and conducting an auction for the Westbrook Apartments. This request is made pursuant to §§ 363(b), (f) and (m) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedures 2002, 6004, 6006, 9007, 9008, and 9014.

### THE SALE PROCEDURES ORDER

The salient terms of the Sale Procedures Order are:

1.     **Auction Date.** The auction for the Westbrook Properties shall occur on April 9, 2021 at 11:00 am (Centra Prevailing Time), or on any other date

Midland Bank and the Debtor select (the "*Auction Date*"). Absent the consent of Midland Bank, the auction shall not be rescheduled or cancelled, although the Debtor shall not be required to conduct the auction if it does not receive more than one Qualified Bid for the Westbrook Apartments. Midland Bank shall be deemed a Qualified Bidder (as defined in the Sale Procedure Order) without any further action and has the right to submit a credit bid prior to the Bid Deadline. If Midland Bank is the Prevailing Bidder on account of its credit bid, the ultimate sale order shall be modified accordingly.

2. **Stalking Horse Protections.** If, in consultation with any advisors that it retains to assist in the sale process, the Debtor deems it advisable to do so, on or before March 31, 2021, the Debtor has the right to select a Stalking Horse for the auction and to provide the stalking horse with a break-up fee of $100,000 and bid protection of $100,000.

3. **Retention of a Broker.** Subject to further approval from the Court on 7 days' notice, the Debtor has the right to employ a real estate broker or other advisors, each acceptable to Midland Bank in the exercise of its reasonable discretion. The broker and any related service providers will assist in the marketing and sale of the Westbrook Apartments. Absent Midland Bank's consent, the broker will not be entitled to a commission or any other compensation if Midland is the successful bidder as a result of making a credit bid. The Debtor shall be able to use up to $10,000 of cash collateral to pay expenses required to effectively market the Westbrook Apartments.

4.    **The Final Sale Hearing and Closing.**   The hearing before the Court to enter a final sale order shall occur on April 13, 2021, or such later date as the Debtor and Midland Bank agree, subject to the Court's schedule.

5.    **Sale Free and Clear.**   Pursuant to § 363(f) of the Bankruptcy Code, any final sale order shall authorize the sale of the Westbrook Apartments to the Prevailing Bidder free and clear of liens, claims and encumbrances.

6.    **Good Faith Purchaser.**   Subject to an entity's ability to challenge the finding at any final sale hearing, the Prevailing Bidder for the Westbrook Apartments shall obtain the protections of § 363(m) of the Bankruptcy Code and thus be deemed to have acquired the Westbrook Apartments in good faith.

7.    **Closing.**   The closing on the sale of the Westbrook Apartments shall occur as promptly as possible after the entry of the final sale order.  The proceeds from the sale shall be paid to Midland Bank at the closing.

## BACKGROUND.

On February 27, 2020, the Debtor filed a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is operating its business as debtor-in-possession under §§ 1107 and 1108 of the Bankruptcy Code. The Debtor's primary asset is a multi-family residential complex on 12.77 acres of land in Springfield, Illinois with a common address of 1833 Seven Pines Road Springfield, IL 62704.  There are 220 units in 12 multi-family buildings, eight two-story buildings with garden-level apartments, three two-story buildings

without garden-level apartments, and a single-story building. The units are 1-bedroom/1-bathroom and 2-bedroom/1.5-bathroom, and generally range from $560 to $700 in rent. There is also a one-story building in the center of the complex used as a rental office and clubhouse. The complex has additional amenities, including an outdoor pool, tennis courts, and a small playground area.

On November 25, 2020, the Court entered an Order authorizing the Debtor to enter into a purchase agreement to sell the Westbrook Apartments for $12,500,000 to NHNY.  The purchase agreement provided that the buyer would have 45 business days (or 9 calendar weeks) to conduct due diligence.  Subject to satisfactory due diligence, the buyer had another 90 business days (or 18 weeks) to obtain financing to consummate the sale.  If, after almost 7 months, the buyer elected not to purchase the Westbrook Apartments on the terms set forth in the purchase agreement, its liability for terminating the transaction was limited to $100,000. After that time, the sale process would have to start anew.

Since the entry of the order on November 27, 2020, the Debtor has hesitated to execute the purchase agreement and deliver it to the buyer because (a) the Debtor has conducted extensive discussions with several entities wishing to refinance the debt the Debtor owes to its creditors, including Midland Bank and (b) the Debtor is concerned that the sale under the purchase agreement may not close in a timely fashion, or close at all, because of the contingencies and the length of time allotted.

Ostensibly due to the delay in signing the purchase agreement and a lack of confidence in the Debtor's ability to refinance its debt, Midland Bank wishes to proceed with a ruling on the stay relief motion it filed in May of 2020.[1]  The parties had asked the Court to reserve ruling on the stay relief motion while the Debtor pursued the sale of the Westbrook Apartments pursuant to the purchase agreement.

Notwithstanding the foregoing, Midland Bank has consented to the implementation of a process to sell the Westbrook Apartments through auction on the terms set forth herein.  The auction process is described below.

## **LEGAL ANALYSIS.**

I.    **The Sale Procedures Order and the Final Sale Order should be entered because the Debtor has a sound business purpose for selling the Westbrook Apartments.**

A.    **The Motion seeks approval for a two-stage sale process.**

This Motion seeks to implement a two-step process for selling the Westbrook Apartments.  The first step consists of the entry of the Sales Procedure Order that sets forth the process for marketing the Westbrook Apartments, the process for soliciting bids and the process for conducting an auction.  The specific processes are set forth in the Statement of Bid and Sale Procedures for Westbrook Apartments appended as Exhibit 1.

---

[1] The Court conducted a 3-day trial on the motion, during which it heard testimony and received other evidence.  The parties also submitted extensive post-trial Findings of Fact and Conclusions of Law.

The second step of the sale process involves the consummation of the sale pursuant to a final sale order. The Debtor contemplates that the final sale order will contain terms and protections required by a buyer of the Westbrook Apartments, but that such terms and conditions are likely to include the protections afforded by § 363(f) and 363(m) of the Bankruptcy Code. The prior provision authorizes the sale of real estate under § 363(b) free and clear of interests and he latter provision grants the buyer the protections accorded a good faith buyer.

**B.    The Debtor has articulated a sound business reason authorizing the sale of the Westbrook Apartments.**

A debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). A debtor's sale of its assets should be authorized pursuant to § 363(b)(1) of the Bankruptcy Code if a sound business purpose exists for doing so. *See, e.g.*, *In re Schipper*, 933 F. 2d 513, 515 (7th Cir. 1991); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983).

Once a debtor articulates a valid business justification for the sale of its assets, there "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995); *see also In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *Priddy v. Edelman*, 679 F. Supp. 1425, 1434 (E.D. Mich. 1988), *aff'd* 883 F.2d 438 (6th Cir. 1989) ("the 'business judgment rule' creates a

presumption that directors have acted in accordance with their fiduciary obligations on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company"); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions").

Courts consider the several factors to determine whether a proposed sale is an exercise of a debtor's sound business judgment: (a) whether a sound business reason exists for the proposed sale; (b) whether fair and reasonable consideration is provided; (c) whether the sale has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided. *In re Eng'g Prods. Co.*, 121 B.R. 246, 247–49 (Bankr. E.D. Wis. 1990).

The Debtor's proposed sale of the Westbrook Apartments satisfies each of the *Engineering Products* factors. First, the Debtor has a sound business reason to sell the Westbrook Apartments: to repay its creditors. Second, fair and reasonable consideration will be paid. An auction process provides a reasonable indicator of market value. It is designed and crafted to allow willing buyers to submit their assessment of the value of the subject property. Third, the sale will have been proposed and negotiated in good faith and to the extent any entity believes otherwise, they will be able to challenge the good faith determination. Last, adequate notice of the sale will be provided. The Debtor will provide substantially more than the 21 days' notice of the auction to all creditors and parties in interest.

## C.      The sale should be free and clear of interests.

A debtor-in-possession may sell estate assets free and clear of any interest in

the asset only if:

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

> (2) such entity consents;

> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

> (4) such interest is in bona fide dispute; or

> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Under this provision, the Debtor may sell the Westbrook Apartments free

and clear of all liens, claims, interests, and encumbrances, except for any liabilities

specifically assumed. To the best of the Debtor's knowledge, information, and belief,

no entity claims an interest in the Westbrook Apartments other than Midland Bank

and the Sangamon County Water Reclamation District. Midland's interest in the

Real Westbrook Apartments is a lien, and the value of that lien is approximately

$8.5 million.  The District asserts a claim for sewer utility charges of $34,505.07,

purportedly secured by liens recorded on March 16, 2020, after the Debtor filed for

bankruptcy.

Should the sale proceeds be less than the amount owed to Midland Bank, it

will have the option of credit bidding its debt, in which case it will then have

consented to the sale.  Additionally, Sangamon County's lien upon the Westbrook

Apartments was recorded post-petition and is thus not a valid encumbrance upon the Westbrook Apartments.

The sale will therefore comply with § 363(f), and the Court should approve the sale free and clear of all interests, with any interests attaching to the sale proceeds.

**D.      The purchaser will be entitled to a good-faith finding under 11 U.S.C. § 363(m).**

The reversal or modification on appeal of an authorization under § 363(b) of a sale of property does not affect the validity of the sale to an entity that purchased the property in good faith, unless the authorization and sale were stayed pending appeal. 11 U.S.C. § 363(m). Although the Bankruptcy Code does not define a "good faith" purchaser, courts have found that "the phrase encompasses one who purchases in 'good faith' and for 'value'." *In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986). To constitute lack of good faith, a party's conduct must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *Id.* (*citing In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). *See also In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995). Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (*quoting Rock Indus.*, 572 F.2d at 1198).

In this case, so long as the sale is accomplished in accordance with the Sales Procedure Order, the Debtor believes the ultimate purchaser will have acted in good faith with respect to the proposed sale and thus be entitled to a good-faith finding under § 363(m).

**Wherefore**, the Debtor respectfully requests that the Court enter the Sale Procedures Order and thus authorize the Debtor to commence the process of selling the Westbrook Apartments and, subject to the conditions set forth herein and in the Sale Procedures Order, enter a final sale order authorizing the Debtor to sell the Westbrook Apartments free and clear of interests and grant such further relief as is appropriate in the circumstances.

Dated: January 26, 2021

Respectfully submitted,

**Northwest Capital Holdings LLC**

By: /s/ William J. Factor
One of Its Attorneys

William J. Factor (6205675)
Jeffrey K. Paulsen (6300528)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:      (312) 878-0969
Fax:      (847) 574-8233
Email: wfactor@wfactorlaw.com

# Exhibit 1- Proposed Order

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **Northwest Capital Holdings LLC**, | Bankruptcy No. 20-05334 |
| Debtor. | Honorable Jack B. Schmetterer |

### ORDER APPROVING PROCEDURES
### FOR THE SALE OF WESTBROOK APARTMENTS

Upon consideration of the motion (the "**Motion**") of Northwest Capital

Holdings LLC., as debtor and debtor in possession (the "**Debtor**"), pursuant to

sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy**

**Code**") as supplemented by Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of this

order (a) Setting Bidding and Marketing Procedures for Sale of Westbrook

Apartments and (b) Authority to Sell Westbrook Apartments Free and Clear of

Liens, Claims and Encumbrances (this "**Sale Procedures Order**"); and upon the

record of the hearing on the Motion and the full record of this Case it is **FOUND**

**AND DETERMINED THAT:**[1]

1.     This Court has jurisdiction over the Motion and the transactions

contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law
shall be construed as findings of fact when applicable. *See* Bankruptcy Rule 7052.

core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue in this

district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      Good and sufficient notice of the Motion and the relief sought

therein has been given, and no other or further notice is required.  A reasonable

opportunity to object or be heard regarding the relief provided herein has been

afforded to parties-in-interest.

3.      The Debtor has articulated good and sufficient business reasons

for this Court to approve the Approved Bidding Procedures appended hereto,

including the scheduling of an offer deadline, auction and sale hearing for the sale

of the Westbrook Apartments.

4.      The Sale Procedures are reasonably designed to maximize the

value to be achieved for the Westbrook Apartments.

5.      The entry of this Sale Procedures Order is in the best interests

of the Estate, the creditors, and other parties-in-interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND
DECREED THAT:**

1.      The Motion is granted as set forth herein.

2.      The procedures for the sale of the Westbrook Apartments, in the

form attached hereto as **Schedule 1** (the "**Approved Bidding Procedures**"), are

incorporated herein and approved, and shall apply with respect to the process for

selling the Westbrook Apartments. The Debtor is authorized to take all actions

necessary or appropriate to implement the Approved Bidding Procedures.

2

3.      The Debtor may use up to $10,000 of cash collateral in furtherance of the marketing and sale of the Westbrook Property.  The Debtor also may seek to retain a real estate broker and/or hire an auction platform (e.g., Ten-X) upon seven (7) days' notice, although any orders related thereto shall be subject to further consideration by the Court and interested parties, including Midland Bank.

4.      As further described in the Approved Bidding Procedures, the deadline for submitting bids for the Westbrook Apartments is April 7, 2021 at 5:00 p.m. (Central Prevailing Time) (the "**Bid Deadline**"), subject to adjustment with the consent of the Debtor and Midland Bank. No bid shall be deemed to be a Qualified Bid (as defined in the Sale Procedures) or otherwise considered for any purposes unless such bid meets the requirements set forth in the Approved Bidding Procedures.

5.      The Debtor may sell the Westbrook Apartments by conducting an auction in accordance with the Approved Bidding Procedures.  If more than one Qualified Bid is timely received by the Debtor in accordance with the Approved Bidding Procedures, the auction (the "**Auction**") shall take place on April 9, 2021 at 11:00 am (Central Prevailing Time) via Zoom or other media, subject to adjustment with the consent of the Debtor and Midland Bank.  The Debtor shall circulate further instructions on the Zoom link or the alternative media to Qualified Bidders. If the Debtor does not receive by the Bid Deadline any Qualified Bid other than a credit bid by Midland Bank, which, without any further action, shall be deemed a Qualified Bid submitted by a Qualified Bidder, then the Auction will not occur and

3

Midland Bank will be deemed the Prevailing Bidder. Midland's claim shall not be

deemed satisfied and extinguished to the extent the amount owed to Midland Bank

exceeds the Midland Bid.

6.    Debtor must proceed with the Auction and the sale process in

accordance with these procedures and to request entry of the Sale Order, subject to

Midland Bank's consent.

7.    Any entity submitting a bid at any time shall be representing

that it has not engaged in any collusion with respect to the Approved Bidding

Procedures, the Westbrook Apartments, or the Auction.

8.    The Sale Hearing shall be held before this Court on April 13,

2021 at 11:00 am (Central Prevailing Time), or as soon thereafter as counsel and

interested parties may be heard and subject to adjournment upon consent of the

Debtor and Midland Bank. The Sale Hearing will be presented and heard

telephonically using AT&T Teleconference. No personal appearance in court is

necessary or permitted. To appear and be heard telephonically at the Sale Hearing,

a party must call in to the hearing using the following information Toll Free

Number: 1-877-336-1839; Access Code: 3900709.

9.    Objections to the sale of the Westbrook Apartments must: (a) be

in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed

with the clerk of the Bankruptcy Court for the Northern District of Illinois, Eastern

Division, 219 S. Dearborn St., Room 713, Chicago, Illinois 60604, on or before 5:00

4

p.m. (Central Prevailing Time) on April 12, 2021, or such later date and time as the Debtor may agree.

10. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

11. The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Order shall be effective immediately upon its entry.

12. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

Dated:

_____

United States Bankruptcy Judge

**Schedule 1: Approved Bidding Procedures**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **Northwest Capital Holdings LLC**, | Bankruptcy No. 20-05334 |
| Debtor. | Honorable Jack B. Schmetterer |

### BID AND SALE PROCEDURES
### FOR WESTBROOK APARTMENTS

By motion dated  January 26, 2021 (the "Motion") Northwest Capital Holdings LLC., as debtor and debtor in possession (the "Debtor") requested approval of, among other things, the procedures through which it will determine the highest or otherwise best price for the sale (collectively, the "Sale") of the Westbrook Apartments.

On February 2, 2021, the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Court") entered an order (the "Sale Procedures Order"), which, among other things, authorizes the Debtor to determine the highest or otherwise best bid for the Westbrook Apartments through the process and procedures set forth in these Approved Bidding Procedures.  The Debtor reserves the right to modify the Approved Bidding Procedures, provided that any such modification shall not be inconsistent with the terms of the Sale Procedures Order and, where necessary, Midland Bank consents.

The following "Bidding Procedures" shall guide the sale of the Westbrook Apartments.[1]

## I.    Property to be Sold

The property to be sold consists of the 220-unit apartment complex located at 1833 Seven Pines Road, Springfield, Illinois, and all property used or useful in the operation of the Westbrook Apartments.

---

[1]Capitalized terms not otherwise defined have the meaning set forth in the Motion or the Sale Procedures Order.

## II.    Method for submitting a bid and procedures for obtaining additional information and conducting due diligence.

### A.    Confidentiality Agreement

Bidders for the Westbrook Apartments (the "**Bidders**" ) shall be required to complete and execute a confidentiality agreement in form and substance acceptable to the Debtor (the "**Confidentiality Agreement**" ). Any Bidder that has executed a Confidentiality Agreement acceptable to the Debtor prior to circulation of these Approved Bidding Procedures may be required to execute a new Confidentiality Agreement.

### B.    Due Diligence

Upon execution of a Confidentiality Agreement, any qualified party that wishes to conduct due diligence on the Westbrook Apartments for purposes of submitting a bid (a "**Bidder**") will be granted access to information that has been or will be provided to Bidders subject to these Approved Bidding Procedures for the purpose of conducting due diligence prior to the Bid Deadline (as defined below), except that the Debtor shall not be required to accept a Confidentiality Agreement from an entity, or let such entity conduct due diligence, if the Debtor reasonably believes an entity is seeking due diligence for reasons other than to submit a Qualified Bid.

The Debtor will make the Westbrook Apartments available for inspection at reasonable times and hours by any potential bidders who satisfy the requirements set by the Debtor.

By submitting a bid, each Bidder shall be deemed to acknowledge and represent that: (a) it has had the opportunity to conduct its due diligence on the Debtor and the Westbrook Apartments prior to making its bid; (b) other than the representations, warranties and covenants in the Form APA, it has relied solely upon its own independent review, investigation, and/or inspection of any documents and information as to the Debtor and the Westbrook Apartments in making its bid; (c) it has completed all due diligence it deems reasonable and necessary under the circumstances; and (d) it waives the right to conduct further due diligence from and after the Bid Deadline. For clarity, the deadline for conducting due diligence shall be the Bid Deadline.

### C.    Bid Deadline and Criteria for Consideration to be Deemed a Qualified Bid

Only those bids that are in material compliance with these Approved Bidding Procedures and any other Approved Bidding Procedures the Debtor implements in consultation with any real estate broker and Midland Bank (each a "**Qualified**

2

**Bid**", and each Bidder submitting a Qualified Bid, a "**Qualified Bidder**") will be eligible for consideration to serve either as the Stalking Horse Bid (as defined below) or as a bid at the Auction. To be considered a Qualified Bid, a bid must comply with all of the following provisions of this section:

   1. **Delivery of Bids.** A bid must be delivered, in writing, via e-mail, to William J. Factor, FactorLaw, wfactor@wfactorlaw.com, or in such further manner implemented and announced by the Debtor, in consultation with a real estate broker and Midland Bank, such that it is received no later than 5:00 pm (Prevailing Central Time) on April 7, 2021 (the "**Bid Deadline**" ). Bids received after the Bid Deadline may be rejected or considered to be Qualified Bids in the reasonable discretion of the Debtor.  As soon as practicable and no later than April 8, 2021, the Debtor shall (i) transmit a copy of each bid to counsel for Midland Bank and (ii) confirm receipt of such bid to the applicable Bidder. Any Bidder submitting a bid shall be solely responsible for meeting the Bid Deadline and verifying that its Bid was actually and timely received.

  The bid must include a participation deposit equal to ten percent (10%) of the purchase price set forth in the bid, in immediately available U.S. funds (each, a "**Deposit**" ). Prior to the Bid Deadline, the Deposit is to be tendered via wire transfer either to the IOLTA Account of counsel for the Debtor or to an account at another secure location (wire instructions will be circulated separately).

  The Deposit shall not bear interest and shall be conclusively deemed subject to the exclusive jurisdiction of the Bankruptcy Court upon receipt. Such Deposit shall be forfeited by a Bidder who submits the Prevailing Bid (including a Back-Up Bidder that is required to consummate the transaction contemplated hereunder with the Debtor following a Failure to Close (as defined below) by a Bidder submitting the Prevailing Bid) but fails to close in breach of the applicable APA.

  The bid must be accompanied with information about the Bidder' s financial qualifications and ability to consummate its bid, including such Bidder' s current financial statements (audited if they exist) or other similar financial information acceptable to the Debtor ("**Bidder' s Financial Qualifications**" ).  The Debtor shall consider a Bidder's Financial Qualifications in determining whether a Bidder is a Qualified Bidder and whether they have submitted a Qualified Bid. Each Bid must also include committed financing, documented to the Debtor's reasonable satisfaction, that demonstrates the Bidder has sufficient liquid assets, or has received sufficient debt and/or equity funding commitments, to satisfy the Bidder's obligations under its bid, including without limitation, the identity and the contact information of the specific person(s) or entity(s) responsible for such committed financing whom the Debtors should contact regarding such committed financing. Such funding commitments shall not be subject to any internal approvals,

syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtor in its business judgment.

2. **Contents of a Bid.** In addition to the foregoing, the bid must (unless otherwise determined by the Debtor) also:

- Provide for a purchase price;

- Remain irrevocable until the approval of a Prevailing Bid, and, if applicable, a Back-Up Bid, at the Sale Hearing (as each of these terms is defined below);

- Include: (i) an executed Asset Purchase Agreement ("**APA**") substantially similar to the Form APA the Debtor will circulate and (ii) a redlined version of the APA marked to show changes to the Form APA;

- If approved at the Sale Hearing as either the Prevailing Bid or the Back- Up Bid, remain irrevocable until the earlier of (A) the Prevailing Bid Closing (as defined below); (B) thirty-five (35) business days following the entry of the Sale Order (as defined below); or (C) in the case of the Back-Up Bid, receipt of the Declination Notice (as defined below);

- Clearly state that all consideration to be paid shall be cash and cash equivalents, and if applicable, any assumed liabilities;

- Not contain any financing contingency, regulatory contingency, release of liability contingency, indemnification contingency, or be subject to further due diligence review, board approval, or the receipt of any non-governmental consents;

- Not request or entitle the Bidder to any termination or break-up fee, expense reimbursement, or similar type of payment, with the sole exception of a Break-Up Fee (as defined below) to which the Bidder will be entitled under these Approved Bidding Procedures if such Bidder is designated as the Stalking Horse (as defined below).

- Disclose (i) the identity of the Bidder and each entity participating in connection with such bid, and the complete terms of such participation, and (ii) any other agreements, term sheets or other written or oral understandings between the Bidder and its affiliates, on one hand, and any current or former insider (as defined in 11 U.S.C. § 101(31)) of the Debtor, on the other hand (the "***Insider Disclosure***").

**D.   Stalking Horse**

The Debtor may (but is not required to) designate one Qualified Bid received

4

on or before 5:00 p.m. (Central time) on March 31, 2021 (the "**Stalking Horse Designation Deadline**" ) to serve as the stalking horse bid in connection with the Auction (the "**Stalking Horse Bid**").

If a Stalking Horse Bid has been designated, then, within one (1) business day after the Stalking Horse Designation Deadline, the Debtor shall (a) inform the Bidder submitting the Stalking Horse Bid (the **" Stalking Horse**" ) that it has been so designated, (b) inform all other Qualified Bidders who have then submitted bids that the Stalking Horse Bid has been designated, and (c) file on the docket of the Bankruptcy Case a notice identifying the identity of the Stalking Horse and attaching a copy of the APA submitted in conjunction with the Stalking Horse Bid (the "**Stalking Horse APA**" ).

To induce Qualified Bidders to submit bids prior to the Stalking Horse Designation Deadline and to serve as the Stalking Horse, the Debtor may provide to the Stalking Horse: (a) bid protection such that any bid seeking to compete with the Stalking Horse Bid must exceed the Stalking Horse Bid by an amount of One Hundred Thousand Dollars ($100,000.00) (the "**Bid Protection**" ); and (b) a termination fee and expense reimbursement in the amount of $100,000 (the "**Break-Up Fee**" ). The sum of the Bid Protection and the Break-Up Fee shall be deemed the "**Initial Overbid Amount**". In the event a Stalking Horse is designated, any Topping Bid (as defined below) at the Auction must be in an amount equal to or greater than the Initial Overbid Amount .

The Break-Up Fee shall only be payable if (a) a higher or otherwise better offer from a Qualified Bidder other than the Stalking Horse actually closes; (b) the Stalking Horse was not in default under any of its obligations under the Stalking Horse APA, and (c) the Stalking Horse was otherwise ready, willing, and able to close on the Stalking Horse APA, or the Stalking Horse APA as modified at the Auction. The Break-Up Fee shall be paid only out of the proceeds of sale of any higher or otherwise better bids and shall not constitute an administrative-expense claim against the Debtor' s estate if for any reason the closing does not occur.

### E.    Auction and Selection of Prevailing Bid and Back-up Bid

If the Debtor does not receive more than one Qualified Bid prior to the Bid Deadline, the lone Qualified Bid shall be the Prevailing Bid.

If the Debtor has received more than one Qualified Bid on or before the Bid Deadline, an auction sale of the Westbrook Apartments in accordance with these Approved Bidding Procedures (the "**Auction**" ) will be held at 11:00 am (Central time) on April 9, 2021 via Zoom or other online media.  If the Debtor uses another online portal (e.g., Ten-X), the Debtor will seek approval for such other portal from

the Bankruptcy Court.  The Auction may occur at a later date and time by agreement of the Debtor and Midland Bank, in which case the Debtor shall advise all Qualified Bidders of the new date and time.

For a Qualified Bidder to participate at the Auction, the Qualified Bidder must appear at the Auction or through a duly authorized representative, unless alternative arrangements are made in advance with the Debtor. If multiple Qualified Bids are received, each Bidder shall have the right to continue to improve its Qualified Bid at the Auction, provided however, that the Debtor shall not be obligated to consider any increases to a Qualified Bid which is inconsistent with the Bidder's Financial Qualifications and the Bidder's ability to consummate the transaction contemplated hereby.

If a Stalking Horse Bid has been designated, the Stalking Horse Bid will be the opening bid at the Auction, unless another Qualified Bid has been submitted which offers aggregate consideration greater than or equal to the Initial Overbid Amount (a "**Topping Bid**"), in which case the Topping Bid will be the opening bid at the Auction. If no Stalking Horse Bid has been designated, the opening bid at the Auction will be the Qualified Bid that the Debtor determines, in its reasonable discretion, to be the highest and best Qualified Bid for the Westbrook Apartments. The Debtor shall notify each Qualified Bidder submitting a Qualified Bid of the terms and conditions of the opening bid as soon as practicable prior to the commencement of the Auction.

Any entity submitting a bid at any time shall, as a consequence of submitting such bid, be representing that it has not engaged in any collusion with respect to the bidding procedures, the sale, or the Auction.

The prevailing bid at the Auction shall be the bid determined by the Debtor, in consultation with Midland Bank, to be the highest and best offer for the Westbrook Apartments (the "**Prevailing Bid**" ). Additionally, the Debtor may (but is not required to) determine the second-highest-and-best offer for the Westbrook Apartments (the "**Back-Up Bid**" ), which may, at the Debtor's option, be accepted in lieu of the Prevailing Bid if the Prevailing Bid does not close.

If the Debtor designates a Stalking Horse and no other Qualified Bid is received by the Bid Deadline, then the Debtor reserves the right to cancel the Auction, and the Debtor shall, at the Sale Hearing, request: (x) that the Stalking Horse Bid be deemed the highest and best offer for the Westbrook Apartments, and be deemed the Prevailing Bid; (y) authority to consummate the Stalking Horse APA; and (z) entry of the Sale Order.

**F.    Sale Hearing**

The Debtor will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below), at which time certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was conducted and the Prevailing Bid was selected in accordance with the Sale Procedures Order and the Approved Bidding Procedures, (ii) the Auction was fair in substance and procedure, and (iii) consummation of the Sale contemplated by the Prevailing Bid will provide the highest or otherwise best value for the Westbrook Apartments and is in the best interests of the Estate and the creditors.

Please be advised that the hearing to approve the Prevailing Bid and the Back-up Bid will be held before the Honorable Jack B. Schmetterer, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn, Chicago, Illinois 60604 (the "**Sale Hearing**" ) at 11:00 am. (Central time) on April 13, 2021, or such later time and place as the Debtor shall notify all Qualified Bidders.  The Sale Hearing shall be conducted telephonically using AT&T Teleconference. No personal appearance in court is necessary or permitted. To appear and be heard telephonically on the Sale Hearing, you must call in to the hearing using the following information—Toll Free Number: 1-877-336-1839; Access Code: 3900709.

At the Sale Hearing, the Debtor shall request entry of one or more orders approving the consummation of the sale contemplated hereby, including the Final Sale Order.

### G.    Return of Deposits

Except as otherwise set forth herein, as soon as practicable (but in no event later than five (5) business days) after the conclusion of the Sale Hearing, the Debtor shall return to each unsuccessful Qualified Bidder (other than the Prevailing Bidder and the Back-Up Bidder, as each of those terms is defined below) the Deposit, submitted by such a Qualified Bidder.

Upon the completion of the Prevailing Bid Closing or the submission of a Declination Notice to the Back-Up Bidder, the Debtor shall return to the Back-Up Bidder (as defined below) the Deposit submitted by the Back-Up Bidder.

### H.    Closing

The sale closing shall occur as promptly as possible after entry of the Final Sale Order (the "**Prevailing Bid Closing**" ).  At the Prevailing Bid Closing, the Deposit of the Prevailing Bidder will be applied against the purchase price to be paid by the Prevailing Bidder.

### I.   Failure of Prevailing Bidder to Close

If the Bidder submitting the Prevailing Bid (the "**Prevailing Bidder**" ) fails to close in accordance with the terms of the Prevailing Bid within seven (7) days from the entry of the Sale Order (a "**Failure to Close**" ), the Deposit of the Prevailing Bidder, shall be conclusively and irrevocably forfeited to, and become property of, the Debtor's bankruptcy estate and, upon approval of the Bankruptcy Court, paid to Midland Bank as promptly as possible.

In the event of a Failure to Close, the Bidder submitting the Back-Up Bid (the "**Back-Up Bidder**" ) shall be required to consummate the transactions contemplated in the Back-Up Bid at the purchase price so offered without further act, deed, or order of the Bankruptcy Court within fifteen (15) business days following receipt of a notice from the Debtor of a Failure to Close, which shall be given by Debtor within two (2) business days after the Failure to Close, unless the Debtor provides written notice to the Back-Up Bidder of its intent not to accept the Back-Up Bid (a "**Declination Notice**" ). In the event of a closing of the transaction under the Back-Up Bid, the Deposit of the Back-Up Bidder shall be applied against the purchase price to be paid by the Back-Up Bidder. If, in the event of a Failure to Close, and absent a Declination Notice, the Back-Up Bidder fails to close timely and in accordance with the terms of the Back- Up Bid, the Deposit of the Back-Up Bidder shall be forfeited to, and become property of, the Debtor's bankruptcy estate and, upon approval of the Bankruptcy Court, paid to Midland Bank as promptly as possible.

The Back-Up Bidder shall be obligated to hold open the Back-Up Bid until the completion of the earlier of: (A) the Prevailing Bid Closing; (B) thirty-five (35) business days following the entry of the Final Sale Order; or (C) receipt of a Declination Notice.

Should both the Prevailing Bidder and the Back-Up Bidder, to the extent there is a Back-Up Bidder that was not provided with a Declination Notice, fail to timely close as set forth in this paragraph I, then the Midland Bid shall be deemed the Prevailing Bid and the sale order shall be promptly revised accordingly and submitted to the Court for entry.

### J.   Reservation of Rights and Highest and Best Bids

Except as otherwise provided in the Sale Procedures Order, the Debtor reserves the right, as it may reasonably determine to be in the best interests of its estate, to: (a) determine which Bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal, and thus, determine the Prevailing Bid and the Back-Up Bid; and (d) reject any bid

that is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Approved Bidding Procedures or the requirements of the Bankruptcy Code; or (iii) contrary to the best interests of the Debtor and its estate.

Nothing contained herein shall prejudice or impair rights under Section 363(k) of the Bankruptcy Code.

The Debtor further reserves all rights to modify or impose, at or prior to the Auction, additional terms and conditions on the sale of the Westbrook Apartments, to extend or adjourn any deadlines set forth herein, and to take any other actions with respect to the Auction, the Sale Hearing or the sale of the Westbrook Apartments which in its business judgment are reasonably necessary to preserve the bankruptcy estate or maximize the value thereof and which are not substantially inconsistent with these Bid Procedures, the Form APA, or any order of the Bankruptcy Court.

In determining which Qualified Bid(s) is(are) the highest and best proposal, and which is the next highest or otherwise best proposal, in connection with both the Auction and also the designation of a Stalking Horse Bid, the Debtor will evaluate the Qualified Bids for each Lot or Lots. It is expressly contemplated by these Approved Bidding Procedures that there may be a Prevailing Bid and Back-Up Bid for an applicable individual Lot or subset of multiple Lots. The Debtor, , may also consider factors other than the purchase price in determining the highest and best bid, including, but not limited to, the Bidder's financial wherewithal, assumption of the Debtor's liabilities, and ability to close in accordance with these Approved Bidding Procedures.

## K.   Miscellaneous

Nothing contained in these Approved Bidding Procedures or in the Sale Procedures Order shall create any rights in any other person or Bidder (including without limitation rights as third- party beneficiaries or otherwise) other than the rights expressly granted to the Prevailing Bidder or the Back-Up Bidder under the Sale Procedures Order, the Approved Bidding Procedures, and the Auction.

Except as provided in the Sale Procedures Order and these Approved Bidding Procedures, the Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of the Sale Procedures Order.